**IN THE COURT OF COMMON PLEAS FOR THE STATE OF DELAWARE
IN AND FOR NEW CASTLE COUNTY**

KATHRYN LEEP,

    Appellant/Plaintiff,

        v.

CLIFF WERLINE,

    Appellee/Defendant.

)
)
)
)
)
)
)
)
)
)
)

C.A. No. CPU4-16-003910

Submitted: November 8, 2017
Decided: January 3, 2018

Olga K. Beskrone, Esquire
Community Legal Aid Society, Inc.
100 W. 10th Street, Ste. 801
Wilmington, DE 19801
*Attorney for Appellant*

Brian T. Murray, Esquire
Brian T. Murray, P.A.
903 S. College Avenue
Newark, DE 19713
*Attorney for Appellee*

**DECISION AFTER TRIAL**

SMALLS, C.J.

This is an appeal from the Justice of the Peace Court concerning the purchase of real estate. On December 21, 2016, the Plaintiff-below/Appellant, Kathryn Leep ("Appellant"), filed an appeal from a judgment below awarded in favor of the Defendant-below/Appellee, Cliff Werline ("Appellee"). On October 5, 2017, trial was convened in the Court of Common Pleas and the Court reserved its decision. The Court heard testimony from Appellant; Hugh Lindo, a Building Inspector with the License and Inspection Department of the City of Wilmington; Jesse Walker, owner of J.R. Walker Roofing; and Appellee. In lieu of oral closing arguments, the Court ordered written post-trial memoranda. Supplemental briefing was completed on November 8, 2017. This is the Court's final decision after consideration of the pleadings, oral and documentary evidence submitted at trial, arguments made at trial, post-trial submissions, and the applicable law.

## PROCEDURAL POSTURE

On December 21, 2016, Appellant filed her Notice of Appeal and Complaint on Appeal in this Court as a *pro se* litigant. Appellant asserted that she purchased 224 W. 20th Street, Wilmington, Delaware 19802 (the "Property") from Appellee in August 2013. Appellant further asserted that Appellee indicated in the Seller's Disclosure of Real Property Condition Report ("Seller's Disclosure") that a "new roof had been installed in about 2010."[1] Appellant argued that this indication was factually inaccurate, as "there were 5 layers of roofing and no new roof had been installed."[2] Plaintiff sought judgment for the cost of the new roof and partial payment to replace the wooden structural supports underneath the roof.

---

[1] Appellant's Complaint on Appeal ¶ 4.
[2] *See id.* ¶ 5.

On January 6, 2017, Brian T. Murray, Esquire entered his appearance on behalf of Appellee, and filed an Answer on January 27, 2017. In his Answer, Appellee denies the substance of Appellant's Complaint. Appellee disagreed with Appellant's assertion that "no new roof had been installed."[3] Alternatively, Appellee stated that he did not know how many layers of roof were on the Property, but it was irrelevant because Appellant purchased the Property "As Is."[4]

On February 3, 2017, Olga K. Beskrone, Esquire entered her appearance on behalf of Appellant. On April 4, 2017, Appellant filed her Pre-trial Worksheet ("Worksheet"). In the Worksheet, Appellant summarized her position as: "The seller's disclosure statement stated that a "new roof was installed in ~ 2010.' While another layer may have been installed in 2010, no new roof was installed."

On October 5, 2017, trial was held in this matter. The Court reserved its decision. In lieu of oral closing arguments, the Court ordered written post-trial memoranda. On October 20, 2017, Appellant filed her Post-Trial Memorandum. On November 2, 2017, Appellee filed his Post-Trial Memorandum. On November 8, 2017, Appellant filed her Reply Memorandum.

## FACTUAL HISTORY

Based on the testimony and evidence presented at trial, the Court finds the relevant facts to be as follows.

In August 2013, Appellant purchased 224 W. 20th Street, Wilmington, Delaware 19802 (the "Property") from Appellee. Appellant signed the Agreement of Sale for Delaware

---

[3] Appellee's Answer at ¶ 5.
[4] *See id.*

Residential Property ("Agreement of Sale") on June 28, 2013, and Appellee signed the Agreement of Sale on June 29, 2013.[5] In accordance with Delaware law, the Agreement of Sale incorporated the Seller's Disclosure of Real Property Condition Report ("Seller's Disclosure"), which both parties had signed.[6] In the Seller's Disclosure, Appellee stated that he purchased the Property in September 2012.[7] Appellee also stated that he had "never lived" at the Property, as he testified at trial that he purchased the Property at a Sheriff Sale.[8]

Relevant to this proceeding, Appellee indicated in Question #28, under the section titled "IV. MISCELLANEOUS," that there were no "violations of local, state or federal laws or regulations relating to this property."[9] For Question #63, under the section titled "VII. STRUCTURAL ITEMS," Appellee indicated that water leakage had occurred in the house in the "past."[10] Under Question #65 ("Have there been any repairs or other attempts to control the cause or effect of problems described in questions 63 and 64? If Yes, describe in XVI"), Appellee checked "Yes."[11] Under the section titled "X. ROOF," Appellee answered Question #76 ("Date last roof surface installed") by handwriting the phrase "estimated 2010."[12]

In response to Question #77 ("How many layers of roof material are there (e.g. new shingles over old shingles)?"), Appellee wrote "U" for "Unknown."[13] Under the last section, titled "XVI. ADDITIONAL INFORMATION," Appellee wrote "There was a previous roof

---

[5] Joint Exhibit 2.
[6] Joint Exhibit 5.
[7] *See id.*
[8] *See id.*
[9] *See id.*
[10] *See id.*
[11] *See id.*
[12] *See id.*
[13] *See id.* Appellee testified at trial that he would check "No" if he "did not know," and would indicate "Unknown" if he "absolutely did not know something."

4

leak, and then a new roof was installed in ~ 2010."[14] He wrote "63 & 65" next to this response, indicating that his statement was an elaboration on Questions #63 and #65.[15] Appellee testified that his answers to the above questions were based on a brief discussion with the previous owner of the Property.

After purchasing the Property at a Sheriff Sale, Appellee noticed evidence of water damage in the interior of the Property below a section of the flat roof. He proceeded to climb onto the roof and testified that the roof looked new. Despite having recently engaged in litigation to evict the previous owner from the Property, Appellee asked him about the water damage and whether there was a new roof on the property.[16] The previous owner informed Appellee that a new roof had been placed on the Property. Appellee described his occupation as an owner and manager of rental properties who has also been involved in the business of "flipping houses" for the past seven years. He testified that he has purchased approximately twenty-four properties from Sheriff Sales over those past seven years. Even with Appellee's extensive knowledge and experience regarding the sale of residential real estate—specifically those sold at Sheriff Sales—Appellee did not verify that a permit had been issued for the "new roof."[17]

Appellant expressly relied on the Seller's Disclosure to determine whether she should purchase the Property, as well as the appropriate value of the Property. She was also influenced by other sensory factors, including the Property's location, backyard, and the

---

[14] *See id.*
[15] *See id.*
[16] Appellee testified that the litigation involved the previous owner's Delaware Supreme Court appeal.
[17] Appellee testified that he was aware of the permit process and had, in fact, obtained permits for repairs on previous occasions.

"general state" of the Property. She was particularly concerned about the state of the roof since she did not possess sufficient funds to purchase the Property and replace the roof, or generally afford extensive repairs on the Property.

During the process of purchasing the Property, Appellant hired a Housing Inspector ("Inspector") to investigate the Property. Regarding the roof, the Inspector informed Appellant that there appeared to be a new "surface" on the flat roof, but he was unable to determine how many layers were underneath the surface because there was a seal around the roof's edges. The Inspector issued a report (the "Report") on his findings. The Report included boilerplate language which recommended that Appellant contact a licensed roofing company to review the Property's roof and issue a certificate. Relying on the Seller's Disclosure and the Inspector's visual observations, Appellant did not acquire a roof certification.

Appellant ultimately purchased the Property for $113,900, which included a $3,000 buyer's credit.[18] After purchasing the Property, Appellant became aware that a large hole existed in the Property's mansard roof which needed to be replaced.[19] Because the hole in the mansard roof had not been discovered before Appellant purchased the Property, she asked Jesse Walker ("Walker) from J.R. Walker Roofing, who was subcontracted to repair the mansard roof, to also inspect the flat roof.[20] After an employee cut into the flat roof down to

---

[18] Joint Exhibit 2.

[19] Appellant understood that the statement "new roof" in the Seller's Disclosure was not referring to the mansard roof, but the "flat roof." Appellant testified regarding the difference between the two roof types and submitted a Mortgage Survey Plan for the Property that diagramed the different roof sections. Appellant's Exhibit 2.

[20] Jesse Walker testified that he has worked in the roofing business for approximately twenty-five years. He also testified that he has owned and solicited business as J.R. Walker Roofing for the past seven years. He

the wood deck, Walker was presented with a "core sample" from the roof. The sample evidenced that the Property's flat roof contained five layers of roofing material, violating the City of Wilmington Code.[21]

Based on Walker's findings, Appellant was concerned about future interior damage and approached three different roofing companies for financial estimates to replace the flat roof. J.R. Walker Roofing was one of those roofing companies and submitted an estimate of $11,100 to replace the flat roof.[22] Appellant hired J.R. Walker Roofing because its bid was the lowest, and she was impressed with Walker's repair of the mansard roof. After J.R. Walker Roofing began the repairs, it became apparent that wooden structural supports under the flat roof needed to be replaced because of extensive rotting. Appellant paid J.R. Walker Roofing $15,400 to replace the flat roof: $11,100 originally quoted for labor and materials to replace the flat roof, $500 in additional materials for the flat roof replacement, and $3,800 for labor and materials to replace the rotting structural supports.[23]

## PARTIES' CONTENTIONS

In Appellant's Post-Trial Memorandum, and at trial, Appellant asserts that the language of the contract is not ambiguous.[24] She argues that Appellee's statement that a "new roof was installed in ~ 2010" violates 6 *Del. C.* § 2752, which requires a seller of residential real property

---

further testified that he is certified by three different roofing manufactures. He estimates having performed "thousands" of roof replacements during his tenure as a roofer.

[21] Hugh Lindo, a Building Inspector who has been employed with the License and Inspection Department of the City of Wilmington for thirteen years, testified that the flat roof violated the City of Wilmington Code ("Code"). He testified that the Code only allows two layers of roofing material, presuming that the allowance was based on weight concerns. To properly replace a roof, he testified that the individual should obtain a building permit, have the property inspected, remove every roofing layer above the wood, apply a new layer, and request a final inspection.

[22] Joint Exhibit 4.

[23] Joint Exhibit 1.

[24] Appellant's Post-Trial Memorandum at 3.

to disclose all known material defects of that property.[25] She states that Appellee should have qualified his statement with facts evidencing that he did not have first-hand knowledge of the installation of the roof.[26]

She also notes that Appellee should have at least contacted the City of Wilmington to review the permit that is required for the installation of a new roof instead of relying on one statement from the prior owner of the Property.[27] Essentially, Appellant asserts that Appellee had an affirmative duty to investigate the prior owner's assertion before filling out the Seller's Disclosure. At the very least, Appellant argues that Appellee's statement regarding a new roof was misleading (i.e. a "material misrepresentation of fact") since the "new roof" was simply a layer added to four pre-existing layers.[28] She notes that the "plain meaning" of roof—"one layer of roofing material"—should be adopted when interpreting the Seller's Disclosure.[29]

Alternatively, if this Court were to deem the contact ambiguous then Appellant argues it should be interpreted against Appellee as the drafter.[30] Relying on the Delaware Uniform Commercial Code, Appellant argues that Appellee failed to complete the Seller's Disclosure in "good faith."[31] That is, without "honesty in fact" or "observance of reasonable commercial standards of fair dealing."[32]

---

[25] 6 *Del. C.* § 2572 ("seller transferring residential real property shall disclose, in writing, to the buyer, agent and subagent, as applicable, all material defects of that property that are known at the time the property is offered for sale or that are known prior to the time of final settlement").
[26] Appellant's Post-Trial Memorandum at 4.
[27] *See id.*
[28] *See id.* at 2 n.3.
[29] *See id.* at 5.
[30] *See id.* at 5-6.
[31] *See id.*
[32] *See id.* (internal quotation marks omitted) (quoting 6 *Del. C.* § 1-201(20)).

In Appellee's Post-Trial Memorandum, Appellee asserts that the issue before the Court should be bifurcated.[33] He argues that the first question is whether 6 *Del. C.* § 2572 was violated, and the second question is whether "Appell[ee] failed to disclose a known material defect [and] Appell[ant] reasonably rel[ied] upon that failure."[34] Relevant to the issue here, Appellee argues that his new roof notation in section XVI cannot be read in a vacuum.[35] He notes that his answers to Questions #76 and #77 under section X, regarding "roof surface" installation, should be considered a notification to Appellant that his statement "new roof" was not referring to a completely new roof, but a "new roof surface."[36]

Appellee also takes issue with the implication that he had a duty to investigate the prior owner's claims about the roof.[37] Based on the Housing Inspector "recommend[ing]" that Appellant receive a roof certification from a local roofing company, Appellee believes Appellant had an equal, if not greater, duty to investigate.[38] Based on Appellant's own investigative duty, Appellee believes he is not at fault for relying on the prior owner's statement and his own visual observations that the top layer was "new."[39] Likewise, Appellee notes that even Appellant's own roofing contractor, Walker, could not determine how many roofing layers were on the Property without dissecting the roof.[40]

---

[33] Appellee's Post-Trial Memorandum at 1.

[34] *See id.* Similar to Appellee's arguments at trial, Appellee is conflating a violation of § 2572 with a claim of fraud. The Court will distinguish this conflation *infra.*

[35] *See id.* at 2. Appellee also argues that the testimony evidences that the "new roof" was installed in approximately 2010; however, this issue is not in contention. Appellant is not arguing that the timeframe of installation is incorrect, but that the term "new roof" is misleading, as the underlying layers had not been removed.

[36] *See id.*

[37] *See id.* at 1-2.

[38] *See id.*

[39] *See id.* at 2.

[40] *See id.* at 2.

Finally, Appellee argues that any claim of fraudulent inducement is moot because Appellant failed to plead fraud in her Complaint.[41] However, even if she had, Appellee argues she failed to establish that the roof's condition was a "material inducement."[42]

## STANDARD OF REVIEW

As trier of fact, the Court is the sole judge of the credibility of each fact witness and any other documents submitted to the Court for consideration.[43] If the Court finds that the evidence presented at trial conflicts, then it is the Court's duty to reconcile these conflicts—if reasonably possible—in order to find congruity.[44] If the Court is unable to harmonize the conflicting testimony, then the Court must determine which portions of the testimony deserve more weight in its final judgment.[45] In ruling, the Court may consider the witnesses' demeanor, the fairness and descriptiveness of their testimony, their ability to personally witness or know the facts about which they testify, and any biases or interests they may have concerning the nature of the case.[46]

In civil actions, the burden of proof is by a preponderance of the evidence.[47] "The side on which the greater weight of the evidence is found is the side on which the preponderance of the evidence exists."[48]

---

[41] *See id.*
[42] *See id.*
[43] *See Nat'l Grange Mut. Ins. Co. v. Davis,* 2000 WL 33275030, at *4 (Del. Com. Pl. Feb. 9, 2000).
[44] *See id.*
[45] *See id.*
[46] *See State v. Westfall,* 2008 WL 2855030, at *3 (Del. Com. Pl. Apr. 22, 2008).
[47] *See Gregory v. Frazer,* 2010 WL 4262030, at *1 (Del. Com. Pl. Oct. 8, 2010).
[48] *See Reynolds v. Reynolds,* 237 A.2d 708, 711 (Del. 1967).

10

# DISCUSSION

Because the parties' categorization of this case has fluctuated, the Court will comment on the nature of the claims before proceeding. First, Appellant's claim concerns a breach of contract. The contract is comprised of the Agreement of Sale and Seller's Disclosure, which merges by law.[49] Indeed, the Seller's Disclosure expressly recites this facet of Delaware law in its preamble.[50] The primary breach alleged is Appellee's failure to disclose known material defects in the Seller's Disclosure; a disclosure which is required by the Buyer Property Protection Act ("BPPA").[51] Yet, a secondary breach is implicated here based on Appellee's failure to complete the Seller's Disclosure pursuant to the implied covenant of good faith and fair dealing.[52] I will address both arguments below.

Second, contrary to the assertions of both parties' supplemental memoranda, and affording Appellant's *pro se* Complaint the appropriate deference[53] it also asserts a fraudulent

---

[49] 6 *Del. C.* § 2573.

[50] Joint Exhibit 5.

[51] 6 *Del. C.* § 2572; *see also Iacono v. Barici*, 2006 WL 3844208, at *4 (Del. Super. Dec. 29, 2006) ("The language of the Buyer Property Protection Act creates a statutory duty of disclosure which may form the basis of a breach of contract claim." (citing *Gutridge v. Iffland*, 889 A.2d 283, 2005 WL 3454129 (Del. Dec. 15, 2005) (TABLE))). Neither Plaintiff's *pro se* Complaint nor her current counsel, have asserted a private cause of action under the BPPA, hence, the Court will not address this ancillary argument. *See Iacono*, 2006 WL 3844208, at *4 (dismissing the plaintiff's claim for an individual action under the BPPA while noting that such an action would "completely overlap" the breach of contract action). In fact, the Court interprets Appellant's statement in her Reply Memorandum—"Plaintiff has not alleged or argued that Defendant violated the terms of the Buyer Property Protection Act"—that she is not asserting an individual claim under the BPPA. Appellant's Post-trial Reply Memorandum at 1-2. Indeed, whether a plaintiff can even assert a private cause of action under the BPPA is unclear. *See Bromwich v. Hanby*, 2010 WL 8250796, at *6-7 (Del. Super. July 1, 2010) ("it is not immediately clear whether the [BPPA] creates a private right of action"); *accord Iacono*, 2006 WL 3844208, at *4 & n.7.

[52] *See McCoy v. Cox*, 2007 WL 1677536, at *9 (Del. Super. June 11, 2007) (noting that the covenant of good faith and fair dealing does not create a separate cause of action, but is inherent in a contract concerning a residential real estate sale) (quoting *Gilbert v. El Paso Co.*, 490 A.2d 1050, 1055 (Del. Ch. 1984), *aff'd*, 575 A.2d 1131 (Del. 1990)).

[53] *See Alston v. Hudson, Jones, Jaywork, Williams & Liguori*, 748 A.2d 406, 2000 WL 275673, at *3 (Del. Mar. 7, 2000) (TABLE).

11

inducement claim.[54] However, fraudulent inducement is preempted in this case because Appellant has claimed a breach of contract, and the fraud claim is not premised on conduct which is "separate and distinct from the conduct constituting [the] breach."[55] Nevertheless, a claim of common law fraud—that is, intentional misrepresentation[56]—can be asserted alongside a breach of contract claim.[57] An element of intentional misrepresentation requires Appellant to show that Appellee's misrepresentations were made with knowledge or "reckless indifference to the truth."[58] As Appellant has alternatively argued that Appellee's statements were "misleading," intentional misrepresentation is implicated.[59] Nevertheless, because I find that Appellee breached the contract by failing to adhere to the implied covenant of good faith and fair dealing, I will not address intentional misrepresentation in the present case.

---

[54] See id. ("To state a valid claim for fraud, a plaintiff must allege: a) a false representation, usually one of fact, made by the defendant; b) the defendant's knowledge or belief that the representation was false, or was made with reckless indifference to the truth; c) an intent to induce the plaintiff to act or to refrain from acting; d) the plaintiff's action or inaction taken in justifiable reliance upon the representation; and e) damage to the plaintiff as a result of such reliance."); Hiller & Arban, LLC v. Reserves Mgmt., LLC, 2016 WL 3678544, at *4 (Del. Super. July 1, 2016) (quoting Abry P'rs V, L.P. v. F & W Acq. LLC, 891 A.2d 1032, 1050 (Del. Ch. 2006)) ("At the very least, a plaintiff must allege "(1) the time, place, and contents of the false representation; (2) the identity of the person making the representation; and (3) what the person intended to gain by making the representations.").

[55] Hiller & Arban, LLC, 2016 WL 3678544, at *4 (internal quotation marks omitted) (quoting ITW Glob. Invs. Inc. v. Am. Indus. P'rs Capital Fund IV, L.P., 2015 WL 3970908, at *6 (Del. Super. June 24, 2015)).

[56] See Johnson v. Preferred Professional Ins. Co., 91 A.3d 994, 1017 (Del. Super. 2014) ("Though this was not a topic specifically addressed in briefing, it would appear that common law fraud and intentional misrepresentation are essentially the same things.").

[57] See Dreisbach v. Walton, 2014 WL 4352100, at *3-4 (Del. Super. Aug. 29, 2014).

[58] See id. at *4.

[59] The Court will not address whether Appellant's claims sound in negligent misrepresentation, as the Court of Chancery has sole jurisdiction over such a claim. See Johnson, 91 A.3d at 1017. The Court also notes that general misrepresentation, which can be fraudulent or innocent and is often cited as an affirmative contractual defense against the sale of real property, is not applicable since Appellant is not seeking to render the contract voidable. See generally Tidewater Envtl. Servs., Inc. v. Stanton, 2012 WL 1813684 (Del. Com. Pl. May 11, 2012); Meredith v. Gies, 2006 WL 8427232 (Del. Com. Pl. Dec. 28, 2006); Kirchner v. Stief, 2001 WL 1555313 (Del. Com. Pl. July 13, 2001); accord DRR, L.L.C. v. Sears, Roebuck & Co., 949 F. Supp. 1132, 1138 (D. Del. 1996) ("the plaintiff here is not seeking to rescind the sales contract. . . . Rather, as in Wolf, this is an action in common law fraud.").

For the reasons discussed below, I find that Appellee has breached the contract. To prevail on a claim for breach of contract, the plaintiff must establish by a preponderance of the evidence that: (1) a contract existed between the parties; (2) defendant breached an obligation imposed by the contract, and (3) plaintiff suffered damages as a result of that breach.[60]

Based on the straightforward case law regarding disputes of this kind and the facts of this case, it is clear that a contract—comprised of the Agreement of Sale and Seller's Disclosure—existed in this case. Likewise, Plaintiff has alleged that she suffered $15,400 in damages based on Defendant's alleged failure to appropriately complete the Seller's Disclosure. I find that the testimony presented at trial and documentary evidence support Plaintiff's claim for damages; therefore, I find that she has proven damages by a preponderance of the evidence.[61] Hence, the remaining question for this Court's consideration is whether Plaintiff has proven by a preponderance of the evidence that Defendant breached the contract.

## I.    First Alleged Breach – Failure to Disclose Known Material Defects.

When the breach of contract action is premised on an incorrect statement in the Seller's Disclosure, the Delaware Superior Court has held:

> A seller of residential real property is required by statute to disclose all the property's known material defects. "[A] seller transferring residential real property shall disclose, in writing, to the buyer, agent and subagent, as applicable, all material defects of that property that are known at the time the property is offered for sale or that are known prior to the time of final

---

[60] *Gregory v. Frazer*, 2010 WL 4262030, at *1 (Del. Com. Pl. Oct. 8, 2010); *VLIW Technology, LLC v. Hewlett-Packard, Co.*, 840 A.2d 606, 612 (Del. 2003).

[61] Appellant appropriately mitigated her damages by soliciting multiple roofing estimates and choosing the lowest bid. *See Tussey v. Finnegan*, 2011 WL 13175049, at *16 (Del. Com. Pl. Apr. 21, 2011) ("In any breach of contract action, the Plaintiff has a duty to mitigate damages.").

settlement." The Seller's Disclosure of Real Property Condition Report ("Disclosure") is not a warranty and is not a substitute for any inspection or warranties that either party may wish to obtain. The Disclosure is intended to be a good faith effort to comply with the Act.

A Disclosure signed by both the buyer and seller, however, becomes a part of the parties' purchase agreement. Accordingly, claims that a seller failed to disclose such material defects have been treated as breaches of contract by Delaware Courts.[62]

"The breach will be deemed material if it concerns the 'root or essence of the agreement between the parties, or [is] one which touches the fundamental purpose of the contract and defeats the object of the parties in entering into the contract.' "[63] I find that the condition of the roof is material to the contract, as it is an essential part of the contract's subject—that is, the Property.[64] I also find that the condition of the roof is a material *defect* because it violates Delaware law.[65] As I find that the roof's condition in this case constitutes a material defect, I will proceed to the final consideration—knowledge.

The case law surrounding this issue requires the seller to have actual knowledge of the material defect.[66] Yet, this precedent involves individual homeowners, not regular business

---

[62] *See McCoy*, 2007 WL 1677536, at *1 (footnotes omitted).

[63] *Lee-Scott v. Shute*, 2017 WL 1201158, at *4 (Del. Com. Pl. Jan. 30, 2017) (internal quotation marks omitted) (quoting *2009 Caiola Family Trust v. PWA, LLC*, 2015 WL 6007596, at *18 (Del. Ch. Oct. 14, 2015)).

[64] Delaware precedent also suggests that unlicensed construction work can constitute a material defect; however, since Appellee did not perform the work, the Court will not address this precedent. *See Walton*, 2014 WL 4352100, at *3.

[65] *See* 31 *Del. C.* § 4113 ("(a) In general.--The exterior of a structure shall be maintained structurally sound and sanitary so as not to pose a threat to the health and safety of the occupants and so as to protect the occupants from the environment. . . . (f) Roofs.--The roof shall be structurally sound, tight and not have defects which might admit rain, and roof drainage shall be adequate to prevent rain water from causing dampness in the walls or interior portion of the building.").

[66] *See, e.g., Gutridge v. Iffland*, 889 A.2d 283, 2005 WL 3454129, at *5 (Del. Dec. 15, 2005) (TABLE) ("Even giving the Buyer the benefit of favorable inferences as to the nature and timing of the sewage back-up, without some evidence that the Sellers actually knew of the plumbing problem, the Buyer's claim must fail."); *Walton*, 2014 WL 4352100, at *3 ("Plaintiffs argue that Defendants should have known of the defect. However, the Court finds that the burden placed upon the Defendants is only to act in good faith to disclose *actually known* defects. The Court finds that Defendants met this burden." (footnote omitted)); *accord Jiefu Ma*, 2012 WL 1416089, at *20-24; *D'Aguiar v. Heisler*, 2011 WL 6951847, at *10 (Del. Com. Pl. Dec. 15, 2011).

market participants.[67] Appellee has failed to present a case, and the Court has not found one, with a factual posture similar to the case *sub judice*. As noted above, a seller is required to accurately complete the Seller's Disclosure with a "good faith effort."[68] This requirement erases the prior common law axiom of *caveat emptor*.[69] That is, the buyer is not blamed for her failure to investigate the quality of the purchase she is making.[70]

It strikes the Court as quite logical that the common law requires actual knowledge for individual homeowners so as not to hold the seller liable for *all* potential problems with the property. Requiring less than actual knowledge in cases involving individual homeowners would overcorrect the law, swinging the pendulum too far away from *caveat emptor*. However, if the actual knowledge standard was also applied to sellers who regularly sold residential real estate, the pendulum would return to a *caveat emptor* model. That is, the unsuspecting buyer would be responsible for laborious investigation and research, and the sophisticated seller could feign ignorance and fail to investigate. Indeed, it seems likely that no sophisticated seller would investigate if the fault is attributed to the individual buyer's failure to inquire.

In light of this distinction, Appellee cannot rely on this case law to support his position. A seller involved in the business of owning and selling real estate cannot be held to the actual knowledge standard of the individual homeowner. Appellee, as a regular dealer of real estate in the market, has a duty to investigate the properties he places on the market.[71] The facts

---

[67] *See supra* note 66.
[68] 6 *Del. C.* § 2574; *see also Iacono*, 2006 WL 3844208, at *4.
[69] *See Iacono*, 2006 WL 3844208, at *4.
[70] *See Jiefu Ma v. Pineault*, 2012 WL 1416089, at *23 (Del. Com. Pl. Apr. 10, 2012) ("whether the buyer independently discovers a defect prior to settlement does not abrogate the seller's statutory duty to disclose all known material defects in writing").
[71] Importantly, this enhanced duty is not an accusation of knowledge based on the seller's failure to disclosure other defects. *See Gutridge*, 889 A.2d 283, 2005 WL 3454129, at *5 ("Buyer also argues that because the Sellers

15

here evidence a sophisticated seller: (1) a seller who is involved in the business of owning and renting properties, (2) a seller who "flips" properties, and (3) a seller who regularly purchases real estate from Sheriff Sales. Therefore, applying this heightened standard of inquiry to Appellee seems appropriate.[72] Accordingly, any reliance on the defense that Appellee's failure to adequately reside in the Property akin to an individual homeowner absolves him of liability is misplaced. As previously noted, this duty to investigate places Appellee on a uniform plane with individual homeowners who are selling properties where they have actually resided. Likewise, his argument that he is not liable because he sold the Property "As is" is similarly unpersuasive.[73] Both arguments are reminiscent of *caveat emptor*.

Notwithstanding, as neither party addressed this facet of the case law at trial, or in the supplemental briefing, the Court will not determine whether Appellee has met this heightened standard of inquiry here. Further, a determination of whether Appellee has satisfied this heightened standard is unnecessary, because I find below that Appellee failed to complete the Seller's Disclosure according to the Implied Covenant of Good Faith and Fair Dealing. For this reason, I find that Appellant does not prevail on this breach of contract claim.

---

admitted making other significant misrepresentations on the disclosure report, it is reasonable to infer that they would have failed to disclose known sewage problems. . . . These arguments are without merit."); *accord McFall v. Marioni*, 2005 WL 8150136, at *1-2 (Del. Com. Pl. Mar. 29, 2005) ("Plaintiffs also point to a failure by the Marionis to disclose a fire in October 2000, as evidence of a mindset to prove negligence and misrepresentation. . . . The issue of failure to note a minor fire in the inspection report adds nothing to Plaintiffs' claim.").

[72] Moreover, at the very least, a sophisticated seller cannot solely rely on the word of a former owner whom the seller evicted and litigated against to the Delaware Supreme Court to solidify the eviction. Such a reliance strikes this Court as not credible.

[73] In fact, the United States District Court for the District of Delaware has noted, "[p]laintiff is correct in its assertion that an "as is" clause in a sales contract will not insulate a seller from suit for its fraudulent misrepresentations." *DRR, L.L.C.*, 949 F. Supp. at 1137.

## II. Second Alleged Breach – Failure to Complete the Seller's Disclosure According to the Implied Covenant of Good Faith and Fair Dealing.

Appellee breached the contract by failing to complete the Seller's Disclosure according to the Implied Covenant of Good Faith and Fair Dealing. In Delaware, the implied covenant of good faith and fair dealing

> requires parties to a contract "to refrain from arbitrary or unreasonable conduct" which deprives a party "from receiving the fruits of the bargain." To state a claim for breach of the implied covenant, a plaintiff must allege: (1) a specific implied contractual obligation; (2) a breach of that obligation; and (3) resulting damage. Importantly, the covenant "seeks to enforce the parties' contractual bargain by implying only those terms that the parties would have agreed to during their original negotiations if they had thought to address them."[74]

In other words, the covenant is "invoked only 'when the contract is truly silent with respect to the matter at hand, and ... when ... the expectations of the parties were so fundamental that it is clear that they did not feel a need to negotiate about them.' "[75] The Superior Court has characterized the covenant " 'as a judicial tool used to imply terms in a contract that protect the reasonable expectations of the parties [there]to.' "[76] If applicable, the court must engage in a fact-intense inquiry, focusing on "fairness."[77]

---

[74] *Markow v. Synageva Biopharma Corp.*, 2016 WL 1613419, at *7 (Del. Super. Mar. 3, 2016).

[75] *Khushaim v. Tullow Inc.*, 2016 WL 3594752, at *4 (Del. Super. June 27, 2016) (quoting *Allied Capital Corp. v. GC–Sun Holdings, L.P.*, 910 A.2d 1020, 1032–33 (Del. Ch. 2006)).

[76] *The Chemours Co. TT, LLC v. ATI Titanium LLC*, 2016 WL 4054936, at *9 (Del. Super. July 27, 2016) (quoting *Dunlap v. State Farm Fire & Cas. Co.*, 878 A.2d 434, 442 (Del. 2005)). Notably, "recent case law reflects a willingness to allow implied covenant claims to survive, despite the presence of relevant contractual language, where a defendant failed to 'uphold the plaintiff's reasonable expectations under that provision' or failed to exercise discretion under the contract *reasonably*." *Markow*, 2016 WL 1613419, at *7.

[77] *Khushaim*, 2016 WL 3594752, at *4 (internal quotation marks omitted) (quoting *Cincinnati SMSA Ltd. P'ship v. Cincinnati Bell Cellular Sys. Co.*, 708 A.2d 989, 992 (Del. 1998)).

In *McCoy v. Cox*, the Delaware Superior Court applied the covenant to an alleged breach based on a seller's disclosure form.[78] Because the court was analyzing whether the seller had *omitted* information from the seller's disclosure form, the court ultimately found the argument moot.[79] However, *McCoy* held that the covenant applied to a seller's disclosure form because the covenant "arises in relation to the enforcement of contractual conditions when one party has the sole discretion to determine the scope or occurrence of a condition."[80] I find no reason to diverge from this precedent when the claims involve an inclusion instead of an omission. Indeed, recently in *Dreisbach v. Walton*, the Superior Court again applied the covenant to claims involving statements made in a seller's disclosure form.[81]

I find that the contract at issue here is silent on the definition of "new roof"—the crux of the dispute in this case. In addition, the separate expectations of the parties were so fundamental that neither party felt a need to negotiate how the phrase "new roof" should be defined. Hence, the present case strikes the Court as involving "developments that could not be anticipated."[82] Appellant reasonably relied on a seller's statement that the roof was new, believing that the condition of the roof satisfied the City of Wilmington Code and would not require further repairs. That is, she interpreted the phrase based on the expectation of a reasonable person.[83]

---

[78] *See McCoy v. Cox*, 2007 WL 1677536, at *9.

[79] *See id.* at *6-9.

[80] *See id.* (internal quotation marks omitted) (quoting *Gilbert*, 490 A.2d at 1055 (Del. Ch. 1984), *aff'd*, 575 A.2d 1131 (Del. 1990)) (finding the defendants to be forthright in completing the seller's disclosure form, except for a broken ceiling fan).

[81] *Walton*, 2014 WL 4352100, at *5-6.

[82] *See id.* at *5.

[83] Pointedly, Appellant's insurance company, Liberty Mutual Insurance, applied a "New Roof Discount" to Appellant's insurance policy partly based on its interpretation of the Seller's Disclosure. *See* Appellant's Exhibit 1; Appellant's Exhibit 3.

Conversely, even though Appellee witnessed water stains in the Property's interior, he did not question the former owner's statement concerning the "new roof." This is particularly curious since Appellee had to evict the prior owner from the Property as well as litigate the eviction to the Delaware Supreme Court. Appellee's reliance strikes the Court as unreasonable. Not only does Appellee own and manage real estate properties, but he has purchased approximately twenty-five properties from Sheriff Sales. In evaluating the tenets of fairness, Appellant, as the unsuspecting buyer, cannot be expected to bear the burden of Appellee's failure to adequately investigate the roof. Even if the Court where to find that Appellee did not possess superior knowledge in this case based on his experience in the real estate market, Question #77 ("How many layers of roof material are there (e.g. new shingles over old shingles)?") would have triggered some reflection from a reasonable person regarding the use of the term "new roof."

The Court refuses to accept the implicit requirements of Appellee's position. I decline to arbitrarily and unreasonably find that an unsuspecting buyer is accountable for a seller's unreasonable use of a common term. Such a finding would tacitly revive the maxim of *caveat emptor*. Accordingly, I find that Appellant is entitled to the "fruits of [her] bargain" based on a preponderance of the evidence.[84]

---

[84] *Markow*, 2016 WL 1613419, at *7.

# CONCLUSION

For the foregoing reasons, I find that Appellant has proven by a preponderance of the evidence that Appellee breached the contract in this case by failing to complete the Seller's Disclosure in accordance with the implied covenant of good faith and fair dealing. Therefore, damages are awarded to Appellant in the amount of $15,400; costs of these proceedings and post-judgment interest at the legal interest rate until paid.

**IT IS SO ORDERED.**

Alex J. Smalls,
Chief Judge